IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Bruce Kempton                  :
           Plaintiff,                    Civil Action 2:13-cv-719
                                        :
      v.                                   Judge Smith
                                        :
Commissioner of Social Security,         Magistrate Judge Abel
             Defendant.              :

**REPORT AND RECOMMENDATION**

Plaintiff Bruce Kempton brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his applications for Social Security Disability and Supplemental Security Income bene-

fits. This matter is before the Magistrate Judge for a report and recommendation on the

administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Kempton maintains that he became disabled on

September 12, 2008, at age 49, due to a ruptured disc in neck/back affecting the left leg,

anxiety, depression, high blood pressure, high cholesterol, diabetes, and carpel tunnel

syndrome. (*PageID* 256.) Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- the administrative law judge erred in adopting the previous administrative
  law judge's residual functional capacity formulation;

- the administrative law judge's determination of Kempton's residual functional
  capacity is not based on substantial evidence; and

- the administrative law judge erred in assigning no weight to the treating
  source opinion of Dr. Provaznik.

*See* Doc. 16.

**Procedural History.** Bruce Kempton has twice applied for benefits. He first applied for benefits in 2004. His claims were denied by administrative decision on September 16, 2008. (*PageID* 140-57.) Plaintiff subsequently filed his application for disability insurance benefits on February 10, 2010 and supplemental security income on April 7, 2010, alleging that he became disabled on September 12, 2008, at age 49. (*Page-ID* 233-41.)[1] The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On April 17, 2012, an administrative law judge held a hearing at which Kempton, represented by counsel, appeared and testified. (*PageID* 92-101.) A vocational expert appeared, but did not testify. (*PageID* 90.) On April 27, 2012, the administrative law judge issued a decision finding that Kempton was not disabled within the meaning of the Act. (*PageID* 62-81.) On May 31, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (*PageID* 52-56.)

**Age, Education, and Work Experience.** Bruce Kempton was born on July 15, 1959. (*PageID* 235, 251.) He has an eighth grade education, with vocational training in truck driving. (*PageID* 257.) Kempton has past relevant work as a truck driver, security guard, warehouse worker, and laborer. (*PageID* 258.)

---

[1]The record does not contain Kempton's application for Supplemental Security Income benefits.

**Plaintiff's Testimony.**  Kempton testified at the April 17, 2012, administrative hearing that his back gave him the "most difficulty."  (*PageID* 92.)  He experienced pain in his low back that went down his left leg.  (*PageID* 93.)  This pain occured "every time I try to walk anywhere."  (*PageID* 93.)  Kempton estimated that the farthest he could walk would be a block.  (*Id.*)  If he tried to walk a block, his left leg went numb.  (*Id.*)  He had not been lifting any weight at all.  (*Id.*)

Kempton further testified to problems with his shoulder for the three or four years prior to the hearing.  (*PageID* 97.)  Even though he has had surgery, he "couldn't use it al all."  (*Id.*)  He still had limited range of motion after the surgery.  (*Id.*)

Kempton testified that his 16 year old son and wife assist him in activities. (*PageID* 94.)  He would occasionally run the vacuum cleaner.  (*Id.*)  His most comfortable position was in his recliner or laying down in bed.  (*Id.*)  His son performed all the yard wor,k and his wife did the cooking and cleaning.  (*PageID* 100.)  Kempton was not involved in any groups or organizations and did little socializing.  (*Id.*)

He also testified to experiencing problems with breathing, and he had "trouble getting air in unless I'm wearing oxygen."  (*PageID* 94-95.)  He was using an oxygen tank at the hearing. It had been prescribed in November 2011.  (*PageID* 95.)

Kempton's third medical problem is pain in his neck that went down into his arms and hands.  (*Id.*)  His neck pain occurs "about every couple of days."  (*PageID* 96.) He re-ceived injections in his back in 2008, but reported no relief.  (*Id.*)

As to his psychological impairments, Kempton testified that he saw Dr. Kao but treatment ended when she moved. He was having "trouble getting into" additional treatment because the facility was "backed up." (*PageID* 97.) At the time of the hearing, he was taking Vistaril for anxiety and Zoloft for depression. The medications were prescribed by his primary care physician. (*Id.*)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will nonetheless summarize that evidence in some detail.

Treatment before September 2008 (date of onset of disability):

Kempton underwent an open right carpal tunnel release in 1999. (*PageID* 678-79.) Records from the Waverly Health Center show that Kempton was treated for anxiety and mood problems in 2003. (*PageID* 336-38.) He was treated by Venkati Yerramilli, M.D. at the Waverly Health Center in 2005 for complaints of increasing pain in his left leg and numbness and paresthesia in his left hand. Dr. Yerramilli noted tenderness over the cervical spine at C6-C7. The diagnoses were cervical radiculopathy and pain in the left hand. (*PageID* 332-33.)

An October 2005 MRI of the cervical spine showed mild degenerative changes. (*PageID* 339.) A January 2008 MRI of the lumbar spine showed mild wedging of the L1 and L2 vertebra with evidence of Schmorl's nodes and degenerative changes involving the facet joints in the lower lumbosacral spine. (*PageID* 401.)

Kempton had a left lower extremity EMG in February 2008, which was abnormal. The interpreting physician reported the study is indicative of chronic S1 radiculopathy with both active denervation changes and chronic reinnervation changes. (*PageID* 505-06.)

In March and April 2008, Kempton received cervical epidural steroid injections to treat cervical radiculitis with degenerative disc disease. (*PageID* 530-32.) A May 2008 x-ray of the cervical spine showed mild degenerative spondylotic spurring in the mid-cervical spine. (*PageID* 504.) An MRI of the cervical spine that same month showed multilevel cervical degenerative disc changes and an extruded midline C6-7 disc was present. (*PageID* 502-03.) A June 2008 left upper extremity EMG was normal. (*PageID* 500-01.)

In June 2008, Kempton was evaluated by James Fleming, Jr., M.D. (*PageID* 681-84.) After reviewing the objective studies and finding that Kempton was neurovascularly intact, Dr. Fleming noted that Kempton had continued radicular symptoms in the left arm with numbness in the left hand. He declined any surgical intervention. (*PageID* 681.)

Treatment after September 2008 (date of onset of disability):

**Physical Impairments.**

Village Health Care: David Provaznik, D.O./Robert Tyree, M.D. Treatment notes from Village Health Care from May 2009 through August 2011 indicate Kempton was treated there for low back pain, neck pain, migraine headaches, right shoulder

pain, and anxiety by primary care physicians Drs. Provaznik and Tyree. (*PageID* 348-64,

403-53, 576-85, 591-98, 636-41, 654-61.)

On August 7, 2009, Kempton was seen by Dr. Tyree. Among his complaints were

low back pain, anxiety, hypercholesterolemia, non-insulin requiring type 2 diabetes,

and hypertension. Regarding Kempton's low back pain, the office notes state:

> . . . the discomfort is most prominent in the lower lumbar spine. This radi-
> ates to the left buttock, left posterior thigh, and left calf. He characterizes it
> as constant. severe, and sharp. This is a chronic problem, with essentially
> constant pain. He states that the current episode of pain  started more than
> 15 years ago. The event which precipitated this pain was a fall down stairs
> while holding a 100 pound sack of feed. This occurred at work. Aggravat-
> ing factors contributing to the back pain may be lifting. He denies urinary
> and bowel incontinence. He notes some pain relief with heat and narcotic
> pain medication. The pain worsens with walking. Medical history is sig-
> nificant for **osteoarthritis and pending litigation related to back injury.**
> He denies history of back surgery, current back-related disability income
> or history of substance abuse. Dr. Gronbach, pain management in Chilli-
> cothe, has reportedly performed some injections and then released Mr.
> Kempton back to his primary care physician in August or September of
> 2008. Patient tells me that Ultram did not help the pain, and Vicodin made
> him sick to his stomach. Zanaflex and Gabapentin seem to help. He
> reports that the Percocet allows him to engage in his activities of daily
> living.

(*PageID* 360.)(Emphasis in original.) As to his anxiety, the notes state:

> true panic attacks occur in addition to generalized anxiety. Apparent trig-
> gers include crowds or public places. Current treatment includes hydroxy-
> zine. Previous attempts at treatment have included a p.r.n. dosed benzo-
> diazepine. Medical history is pertinent for **depression**. He tells me that
> Buspar did not work. Dr. Kao has recently prescribed Klonopin 0.5 mg,
> however the patient found that to be ineffective and stopped. He prefers
> to stay with the hydroxyzine, which does help.

(*Id*.)(Emphasis in original.)

On September 10, 2009, Dr. Tyree's notes state that Kempton was in no apparent distress. (*PageID* 358.) He reported a history of low back pain, with the discomfort most prominent in the lower left lumbar spine. The pain radiated into the buttocks. Kempton described the pain as constant, moderate in intensity, and sharp. He said the pain had lasted for 15 years. (*PageID* 355.) On examination, his gait was normal. Straight leg raising was negative. (*PageID* 358.)

Kempton described true panic attacks and generalized anxiety. Triggers appeared to include crowds and public places. He had a history of depression. He said BuSpar did not work. Dr. Kao had prescribe Klonopin, but Kempton stopped taking it because it did not work. He preferred hydroxyzine, which did work. Kempton was no longer seeing Dr. Kao because she released him with the understanding that Dr. Tyree would continue to prescribe the psychotropic medications. (*PageID* 355.) On psychiatric examination, Dr. Tyree found that Kempton's affect and demeanor were appropriate. He had normal psychomotor function. His speech patterns were normal. (*PageID* 358.)

On September 30, 2009, the physical and psychiatric examinations were within normal limits. (*PageID* 352-53.) Kempton was well developed, well groomed, and in no apparent distress. (*PageID* 353.) Kempton smoked 1½ packs of cigarettes a day and had a 160 pack-year history. (*PageID* 351.) Dr. Tyree recommended smoking cessation, exercise, and a low cholesterol/low fat diet. (*PageID* 353.)

On October 9, 2010, Dr. Provaznik's handwritten office notes state that insomnia was still a problem. (*PageID* 581.) On June 9, 2010, Kempton was treated for the flu.

(*PageID* 585.) On August 7, 2010, Kempton told Dr. Provaznik that he had insomnia and anxiety. (*PageID* 583.) On August 8, 2010, Kempton still was not sleeping well. The medication prescribed for insomnia was not working. (*PageID* 582.)

On October 20, 2009, Kempton complained about right shoulder pain. He had a torn rotator cuff that limited the range of motion in his right shoulder. (*PageID* 580.) On November 13, 2010, Kempton said he had been having anxiety attacks. Diagnoses included recurrent right shoulder pain and chronic insomnia. (*PageID* 579.) January 8, 2011 state that Kempton said he was only sleeping two hours a night. (*PageID* 578.) His office notes for February 5 and March 2, 2011 state that Kempton had no new complaints. (*PageID* 576-77.)

Dr. Provaznik's office notes for April 2, 2011 indicate that plaintiff's C-pap needed to be titrated. Kempton also was examined for right shoulder pain. There was a full range of motion. (*PageID* 641.) On April 30, 2011, Kempton said that the pain in his back and neck was getting worse. He still had insomnia. (*PageID* 640.) On May 25, 2011, Kempton told Dr. Provaznik that Trazadone was not helping with his insomnia. (*PageID* 639.) On June 25, 2011, Kempton got refill of the pain medication (Percocet and Zanoflex). On October 19, September 24, July 20, and August 24, 2011, Kempton was seen to get prescriptions refilled. He had no medical complaints. (*PageID* 636-37 and 666-68.) On December 7, 2011, Kempton had just gotten out of the hospital, where his diagnoses were bronchial pneumonia, chronic COPD, and emphysema. (*PageID* 665.)

Dr. Provaznik's February 17, 2010 residual functional capacity questionnaire. On February 17, 2010, Dr. Provaznik filled out a "Physical Capacity Evaluation" questionnaire. (*PageID* 496-97.) He stated the opinion that Kempton could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for less than 30 minutes

in an 8-hour workday and for 30 minutes before needing to sit. He could walk every 30 minutes for 5 minutes at a time. He could sit for less than 2 hours in an 8-hour day and for up to 60 minutes at one time. Plaintiff would need to lie down 2 times during an 8-hour workday due to limited flexion of the lumbar spine. (*PageID* 496.) Dr. Provaznik said that Kempton would have difficulty balancing on level terrain as well as narrow, slippery, or erratically moving surfaces. He could only occasionally reach, handle, finger, feel, and push/pull as a result of decreased range of motion of the cervical spine as well as a herniated disc in that region. Kempton could not drive long distances and would need to lie down frequently. Dr. Provaznik concluded that Kempton has been so limited since 2005. (*PageID* 497.)

Dr. Provaznik's second residual functional capacity evaluation. On December 14, 2011, Dr. Provaznik filled out another "Physical Capacity Evaluation" questionnaire. (*PageID* 669-73.) He listed Kempton's diagnoses as hypertension, high cholesterol, COPD, and chronic low back pain. He stated the opinion that Kempton could occasionally lift and carry no more than 20 and 5 pounds frequently. He could stand and walk for up to 2 hours and sit 4 hours during an 8-hour work day . Kempton could sit for 45 minutes before needing to stand and stand 30 minutes before needing to sit. (*PageID* 669.) Dr. Provaznik also determined that Kempton could never use ladders and could occasionally twist, stoop/bend, crouch, and climb stairs. He could occasionally reach and push/pull. Dr. Provaznik said that Kempton should avoid concentrated exposure of extreme cold, extreme heat, wetness, humidity, noise, vibration, and fumes odor and dusts and avoid all exposure to hazards. (*PageID* 670-71.)

Phillip Swedberg, M.D. On June 1, 2010, Dr. Swedberg performed a disability evaluation of Kempton for the state agency. (*PageID* 454-62.) Kempton's chief complaint was low back pain for the past 6-7 years which he believed was related to falling down steps twenty years before. Prolonged sitting exacerbated his pain: "My (left) leg goes numb." (*PageID* 454.) Kempton reported pain radiating down the left leg. Pro-

longed ambulation or standing exacerbated the pain, as did bending, stooping or lifting heavy objects. (*Id.*)

On examination, Dr. Swedberg observed that Kempton was "a massively obese middle-aged man who ambulate[d] with a normal gait without the use of ambulatory aids . . . ." (*PageID* 455.) He was comfortable both sitting and standing. Kempton had normal memory, intellectual functioning, and orientation. Range of motion in the cervical spine was within normal limits. Muscle and grasp strength was well-preserved over the upper extremities. Manipulative ability was normal in both hands. There was no evidence of atrophy. (*Id.*)

On examination of the lumbar spine, Dr. Swedberg found no evidence of paravertebral muscle spasm or tenderness to percussion. Straight leg raising was normal on the right but diminished to just 30 degrees on the left. There was no tenderness to palpation of the hips. Range of flexion of the hips with the knees flexed was normal to 100 degrees bilaterally. (*Id.*) On neurological examination, there was no evidence of muscle weakness or atrophy. Pinprick and light touch were diminished from the left mid thigh down. The left patellar and Achilles tendon reflexes were hyperactive. The contralateral reflexes were brisk. Abduction of the hips was normal, flexion of the knees was normal and plantar flexion of the ankle joints was normal. Dr. Swedberg's diagnostic impressions were morbid obesity and low back pain with prob-able radiculopathy. (*PageID* 456.)

Dr. Swedberg concluded that Kempton was capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying. In addition, he would have no problems reaching, grasping or handling objects. (*Id.*) An x-ray of the lumbar spine was normal. (*PageID* 458.)

W. Jerry McCloud, M.D./Gerald Klyop, M.D. On June 28, 2010, Dr. McCloud, a state agency physician, conducted a physical residual functional capacity assessment based on Kempton's record. (*PageID* 467-74.) Dr. McCloud stated the opinion that Kempton could lift and/or carry up to 20 pounds occasionally and 10 pounds frequent-

ly; sit about six hours in an eight-hour work day; and stand and/or walk about six hours in an eight- hour work day. (*PageID* 468.) He concluded that Kempton could never perform overhead reaching with his left arm, but could perform frequent fine and gross manipulations with his left hand and arm. (*PageID* 470.) Dr. McCloud also found Kempton's ability to push and/ or pull was limited in the upper extremities. (*PageID* 468.) He stated that his residual functional capacity finding was an adoption of that made by the administrative law judge in his September 16, 2008 ruling denying plaintiff's first application for social security disability benefits. (*Id*.) Dr. McCloud noted that medical records indicated that Kempton's lungs were clear. His gait was normal. Straight leg raising was normal on the right and diminished to 30 degrees on the left. There was no evidence of muscle weakness or atrophy. There was a slightly diminished range of motion of the lumbar spine and left knee. An x-ray of the lumbar spine was normal. The range of motion of the cervical spine was within normal limits. (*PageID* 468.) On December 27, 2010, Dr. Klyop reviewed the record and affirmed Dr. McCloud's assessment. (*PageID* 547.)

Pike Community Hospital. On October 17, 2010, Kempton went to the emergency room with complaints of right shoulder pain. (*PageID* 625-34.) He exhibited pain with flexion and extension of the right shoulder joint. There was resistance with movement, and the emergency room physician was unable to reduce it with gentle traction. Kempton had a full range of motion at the wrist and elbow. His shoulder motion was significantly limited but he was able to hold it up against gentle resistance. (*PageID* 633.) An x-ray of the right shoulder showed no fracture and mild degenerative changes. (*PageID* 631.) Kempton's arm was placed in a sling and he was diagnosed with right shoulder pain. (*PageID* 633-34.)

Kempton went to the emergency room on November 29, 2011, with complaints of difficulty breathing and coughing. He had a history of having smoked up to four packs of cigaretes a day since age 9. He had never had pulmonary function testing and did not have home oxygen. (*PageID* 643.) A chest x-ray showed no acute pulmonary disease.

There was no pleural effusion. The lungs were clear. (*PageID* 649.) On exam-ination, there were some scattered rhonchi but no expiratory wheezing. (*PageID* 644.) Kempton was diagnosed with an exacerbation of chronic obstructive pulmonary dis-ease, hypertension, gastroesophageal reflux disease, diabetes mellitus 2, hyperlipidem-ia, depression and anxiety, degenerative joint disease, and hypokalemia, resolved.  An antibiotic was prescribed, and he was advised to quit smoking.  (*PageID* 644-45.)

Olayinka Aina, M.D.  On December 6, 2010, Dr. Aina performed a disability examination for the state agency.  (*PageID* 536-42.)  Kempton told Dr. Aina that his low back, neck and left knee pain was generally relieved by medication.  (*PageID* 536.)  Dr. Aina found a limited range of motion in Kempton's lumbosacral spine, cervical spine, and left knee.  (*PageID* 537.)  Dr. Aina diagnosed low back pain, neck pain, and left knee pain.  (*Id.*)  Dr. Aina opined that Kempton could lift, pull, and push about 40 pounds occasionally and about 25 pounds frequently.  According to Dr. Aina, Kemp-ton's ability to do prolonged standing and sitting for more than forty five minutes to one hour might be affected.  (*PageID* 538.)

Adena Health System.   A January 12, 2011 MRI of the right shoulder showed acute to subacute supraspinatus partial articular sided footprint tear with extension to the rotator cuff interval, infraspinatus tendinopathy, medial intraarticular displaced biceps tendon, mild glenohumeral degenerative changes, and acromioclavicular osteo-arthritis with moderate subacromial bursitis.  (*PageID* 600-01.)

On March 10, 2011, Kempton underwent a right shoulder arthroscopy, sub-acromnial decompression, distal clavicle resection, rotator cuff repair, and open biceps tenodesis.  (*PageID* 587-89.)  His postoperative diagnoses were right shoulder acromio-clavicular joint arthritis, rotator cuff tear, and biceps tear.  (*PageID* 587.)

Richard Ward, M.D.  On February 24, 2011, Dr. Ward, examined Kempton for his workers' compensation claim.  (*PageID* 690-96.)  Kempton  reported injuring both wrists and hands in February 1999 while working as a truck driver. He underwent bilateral carpal tunnel surgery in early 2000.  He said he continued to have problems following

this surgery with pain, numbness, tingling, and weakness of grip strength in both hands.

On examination, Kempton had pain over the distal volar aspect of each forearm, across his wrist, and into his hands. (*PageID* 695.) Kempton had positive Tinel's test on both sides, positive wrist flexion test on both sides and thenar atrophy on both sides, especially on the left side. (*Id*.) Kempton was able to make a full fist with each hand with normal sensation. He displayed normal grip strength. Dr. Ward assessed a 30% permanent partial impairment. (*PageID* 696.)

Dr. Ward also completed a Physical Capacity Evaluation in which he found Kempton was limited to lifting 10 pounds occasionally. (*PageID* 692.) He also said that Kempton would not be able to perform repetitive pushing and pulling or fine manipulation. He was able to use his hands for simple grasping. He could not climb ladders. He was able to reach above shoulder level. (*PageID* 693.)

**Psychological Impairments.**

Lilly Kao, M.D. Kempton was referred to Dr. Kao by Dr. Tyree. At his initial psychiatric evaluation on March 9, 2009, Kempton reported that he has been depressed for three or four years. His only psychiatric history was seeing a psychiatrist who evaluated him for social security. His depression started when he could no longer drive his truck. (*PageID* 343.)

Kempton told Dr. Kao he was fighting for disability. His wife was also disabled. Although he took Zoloft, which helped some, he was still depressed. His energy was poor. He usually sat in a recliner all day and watched television. He had some manic episodes when he might go 4-5 days with little sleep but sill be energetic and do a lot of yard work.

On mental status examination, Dr. Kao found Kempton's eye contact was downward and rapport was difficult to establish due to anxiety. (*PageID* 345.) She noted he was wringing his hands the entire time and had a restricted affect. (*Id*.) She also reported his speech was low in volume and slow in rate. (*Id*.) Dr. Kao diagnosed Kempton

with major depressive disorder (single episode, chronic), and anxiety disorder, NOS. She assigned a Global Assessment of Functioning ("GAF") score of 40. She increased Kempton's dosage of Zoloft from the 150mg prescribed by Dr. Tyree to 200 mg. (*PageID* 343-46.)

When seen on July 13, 2009, Kempton reported some improvement in his depression with Zoloft, but his anxiety was "still pretty bad." His mood was okay, but his affect was restricted. Dr. Kao kept his diagnoses as major depressive disorder (chronic), and anxiety disorder, NOS. She prescribed Klonopin in addition to Zoloft. Kempton was to see Dr. Kao in a month. She told him to bring the pill bottles in every time so she could get a pill count. (*PageID* 342.)

The next report from Dr. Kao is dated April 30, 2010. Dr. Kao's notes say that she had not seen Kempton, and he reported that he had been very depressed and had run out of his Zoloft. He did not get along well with his mother, who was in a nursing home with lung cancer. She did not want him to visit her. He had also lost his step father a year ago. Dr. Kao found Kempton's mood was depressed and his affect was restricted. His speech was very low in volume and slow in rate, and his eyes were downcast. She prescribed Zoloft. (*PageID* 574.)

Kempton reported feeling less depressed on May 14, 2010. Dr. Kao noted a restricted, very dysphoric affect and speech still low in volume and slow in rate. She diagnosed him with major depressive disorder (single episode, chronic). Dr. Koa was trying to set Kempton up with Scioto-Paint Valley for counseling. (*PageID* 573.)

Stephanie J. Castle, Ph.D. Dr. Castle evaluated Kempton on December 13, 2010 at the request of the state agency. (*PageID* 543-46.) Kempton reported an eighth grade education and childhood abuse. He had a driver's license and was briefly in the U.S. Army until he had a physical injury. He took psychotropic medication prescribed by his family doctor. He had not seen a psychiatrist since June 2010 because his psychiatrist left the community mental health center. He worked many years as a truck driver, until he was fired for missing work as result of health problems. Kempton felt truck driving

was a good fit for him as he had a history of conflicts with others. His reported activities of daily living included watching TV and caring for his pet dog. He lived with wife who handled most household chores and the finances. Within the last year he had an episode of hypomania during which he felt like he could not sit still. Kempton said he had some racing thoughts with increased irritability and anger. (*PageID* 544.)

During the mental status examination, Dr. Castle found that Kempton's affect was flat and his mood depressed. He said that he had crying spells every week or two. Kempton's IQ was estimated to be in low average range. She diagnosed Kempton with bipolar disorder II and assigned him a GAF score of 49. (*PageID* 545.) Dr. Castle stated the opinion that Kempton was moderately impaired in his ability to relate to others and to maintain attention, concentration, persistence, and pace to perform routine tasks. She found Kempton's ability to understand, remember, and follow instructions was mildly impaired. Dr. Castle concluded that Kempton's ability to withstand stress and pressures associated with day-to-day work activity was markedly impaired by his unstable mood. (*PageID* 546.)

<u>Karen Steiger, Ph.D.</u> After her review of the record on January 11, 2011, state agency psychologist Dr. Steiger stated the opinion that Kempton was mildly limited in his activities of daily living, had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation. (*PageID* 562.) Dr. Steiger further determined that the evidence did not establish the presence of the "C" criteria. (*PageID* 563.)

In the narrative assessment of Kempton's ability to engage in work-related activities from a mental standpoint, Dr. Steiger noted that his allegation of worsening depression was supported, but Dr. Castle's opinion of marked limits in stress tolerance was not. Her review of the record suggested moderate limitation in that area. Dr. Steiger concluded that Kempton appeared to be mentally capable of learning and performing work tasks that are within his physical restrictions if the work setting did

15

not have strict time or production demands.  He could work best in settings in which he could work relatively independently and without close supervision.  (*PageID* 550.)

Dr. Steiger concluded Kempton was moderately limited in the following abilities: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday or workweek without inter-ruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from superiors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially approp-riate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.   Dr. Steiger concluded Kempton was markedly limited in his ability to interact appropriately with the general public. (*PageID* 548-49.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1. The claimant meets the insured status requirements of the Social Secur-ity Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since Sept-ember 12, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: neck, back and left leg pain; bilateral carpal tunnel syndrome, status post carpal tunnel release surgery on the right; obesity; chronic obstructive pulmonary disease (COPD); shoulder and arm pain; depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impair-ments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [administrative law judge] finds that the claimant has the residual functional capacity to

perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can never perform overhead reaching with his non-dominant left arm. He can perform frequent (as distinct from constant) fine and gross manipulation with his non-dominant left hand and arm but has no such limitations in his right hand and arm. He can perform jobs without high production requirements or those performed at a fast pace. He can work where no more than brief or superficial contact with others is necessary.

6. The claimant is able to perform his past relevant work as a security guard (20 CFR 404.1565 and 416.965).

7. The claimant bas not been under a disability, as defined in the Social Security Act, from September 12,2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 67-80.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**

- <u>The administrative law judge erred in adopting the previous administrative law judge's residual functional capacity formulation</u>.  Plaintiff states that administrative law judge Keller uses very vague language in analyzing this case under *Drummond*, simply citing the rule of the case and then indicating that "[t]he findings of the prior decision in this case are adopted."  Plaintiff asserts  that there was new and material evidence presented in this claim, and, as such, that *Drummond* should not have been applied.  (Doc. 16, *PageID* 729-32.)

- <u>The administrative law judge's determination of plaintiff's residual functional capacity is not based on substantial evidence.</u>   Plaintiff argues that there is not substantial evidence supporting the administrative law judge residual functional capacity findings.  Specifically, the administrative law judge made numerous factual errors, engaged in selective citation, and erred in weighing and assessing the opinions of the consultative examiners.  (*Id.* at *PageID* 733-38.)

- <u>The administrative law judge erred in assigning no weight to the treating source opinion of Dr. Provaznik</u>.  Plaintiff argues that the administrative law

judge's short and simple analysis of Dr. Provaznik's opinion(s) was not based

on substantial evidence. The administrative law judge would have given Dr.

Provaznik's opinions greater weight had he properly analyzed them under

the treating physician rule and the C.F.R. factors. (*Id.* at *PageID* 738-42.)

**Analysis.** The administrative law judge made the following analysis of the medical

record to support his finding that Kempton retained the ability to perform a reduced

range of jobs having light exertional demands:

> In summary, although the claimant does have some lumbar and cervical
> spine pain which causes some limitations, these limitations do not prevent
> him from performing most light work activities. The claimant has had only
> the most conservative and non-aggressive treatment for his low back and
> cervical spines. He did undergo arthroscopic surgery to his right shoulder in
> March 2011. However, although he has discussed continued pain in his
> shoulder and neck to his doctor, he has not had any aggressive surgery to this
> area. He has not been recommended, nor completed any physical therapy,
> has had only a few lumbar spine injections and does not use a transcutaneous
> nerve stimulator (TENS) unit or any type of back brace. He does not use any
> ambulatory aid such as a cane or walker although he is prescribed Oxyco-
> done, Gapapentin and Zanaflex for pain. There also is no indication in the file
> that any doctor had recommended any further surgery. There is no evidence
> that the claimant experiences true radicular type pain and no evidence of
> severely diminished range of motion of the upper or lower extremities. There
> has been no guarding noted during physical examinations and no evidence of
> positive straight leg raising. There is no evidence of severely diminished deep
> tendon reflexes, no muscle atrophy and only mild diffuse tenderness observ-
> ed during physical examinations. There is no evidence of motor or sensory
> abnormalities. Neurological examination was within normal limits with act-
> ive upper and lower extremity reflexes. There has been only minimal subjec-
> tive evidence of edema and no evidence of difficulties toe to heel walking.
> MRI and x-ray findings have resulted in only minimal degenerative changes
> in the lumbar and/or cervical spines. Although the claimant has alleged some
> continued radiation of pain into his shoulders and arms, there is no EMG
> evidence that the claimant is experiencing true lumbar and/or cervical spine
> radiculopathy and no evidence that any doctor has order this testing thereby

suspecting that this is a problem. He has not sought treatment from a specialist for his low back or cervical spine, nor has such treatment been recommended by his family physician as would certainly be expected were this condition as severe or disabling as alleged. In conclusion, this type of treatment during a claimed period of disability tends to suggest that the claimant's symptomatology was sufficiently controlled with medications alone. These impairments do not prevent the claimant from performing most light work activities.

Although the claimant complains of knee pain, the medical evidence of record clearly supports no evidence of any major dysfunction of any knee joint. There is no evidence of any gross anatomical deformity, chronic joint pain and stiffness or signs of significant limitation of motion or other abnormal motion of the affected joints. He does not require the use of cane, walker or wheelchair to support himself to walk and is full weight-bearing and capable of ambulating effectively. This impairment is not disabling.

There is no evidence that a pulmonary function study has been performed or that the claimant's doctors have recommended one for his COPD. He does not experience chronic acute bronchitis attacks or pneumonia. Although he came to the hearing using an oxygen tank, there is no evidence in the record to supporting that this was prescribed by any doctor. This is especially inconsistent since the claimant is not even prescribed any pulmonary medications (Exhibit B-17E).

(Doc. 9, *PageID* 76-77.)

Plaintiff argues that the administrative law judge erred in finding he had the residual functional capacity for a range of light work because new and material evidence "resulted in an residual functional capacity finding different, at least to some degree, than ALJ Michaelson's."  (Doc. 16, *PageID* 732.)

In finding that Kempton had the residual functional capacity for a range of light work, the administrative law judge properly considered the most recent denial of Kempton's prior claim at the hearing level, *i.e.*, the September 16, 2008 administrative

law judge decision.  (*PageID* 140-57.)  At that time, Administrative Law Judge Michael-

son concluded that Kempton had the residual functional capacity to perform light work

except that he could never perform overhead reaching with his non-dominant left arm.

He could perform frequent (as distinct from constant) fine and gross manipulation with

his non-dominant left hand and arm, but has no such limitations in his right hand and

arm.  He can perform jobs without high production requirements or those performed at

a fast pace.  He can work where no more than brief or superficial contact with others is

necessary.  (*PageID* 152-53.)  Contrary to plaintiff's claim, the administrative law judge

in the instant case appropriately recognized the application of *Drummond v. Commiss-*

*ioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and *res judicata*.  (*PageID* 65.)

   The Sixth Circuit has held that, where the final decision of the Agency after a hear-

ing on a prior disability claim contains a finding of a claimant's residual functional cap-

acity, the Agency may not make a different finding in adjudicating a subsequent dis-

ability claim with an unadjudicated period arising under the same title of the Act as the

prior claim unless new and additional evidence or changed circumstances provide a

basis for a different finding.  *Drummond v. Commissioner*, 126 F.3d at 842.  Administrat-

ive Law Judge Keller discussed *Drummond* and acknowledged that there was a good

deal of new medical evidence to consider since the September 2008 decision.  (*PageID*

65.)  However, Administrative law judge Keller adopted the light residual functional

capacity found by Administrative Law Judge Michaelson.  (*Id.*)  Administrative Law

Judge Keller's finding in this regard is supported by substantial evidence in the record

as a whole, including the shared assessment of the state agency reviewing physicians, Drs. McCloud and Klyop. (*PageID* 467-74, 547.) The administrative law judge also relied on the opinions of Dr. Aina and Dr. Castle by giving their opinions "some weight"; and Dr. Ward, by giving his opinion "partial weight." (*PageID* 77-78.) Therefore, the administrative law judge appropriately found that he was bound to find Plaintiff had almost the identical residual functional capacity, even considering the new and material evidence.

Plaintiff claims that the administrative law judge erred in finding that his condition did not worsen and relies on the treatment records from Dr. Kao; that Kempton established treatment with primary care physicians, Dr. Provaznik and Dr. Tyree; an October 2010 MRI; the March 2011 right shoulder surgery; and an emergency room visit on November 29, 2011. (*See* Doc. 16, *PageID* 730-32.) As an initial matter, the administrative law judge did not fail to consider this evidence, as Kempton alleges. The administrative law judge explicitly discussed the disability opinion given by Dr. Ward for Worker's Compensation purposes, Kempton's surgery to his right shoulder, Dr. Swedberg's opinion, and the November 2011 emergency room visit and also specifically referenced the exhibits containing the other diagnostic tests referenced by plaintiff. (*PageID* 74-76.) He also properly noted the February 2010 physical capacities evaluation of Dr. Provaznik[2] and explained that it "is far too extreme to be worthy of belief. His

---

[2]The administrative law judge credited Dr. Provaznik's opinion to his partner, Dr. Tyree, who also treated Kempton at the same practice.

opinion is not consistent with the other objective MRI and x-rays evidence of record or the claimant's own description of his daily activities." (*PageID* 77.)  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. "  20 C.F.R. § 404.1527(c)(2); Social Security Ruling (SSR) 96-2p; *Gayheart v. Commissioner of Social Security*,  710 F.3d 365, 375 (6th Cir. 2013).

As noted above, in February 2010 and December 2011, Dr. Provaznik stated the opinion that Kempton could essentially perform less than sedentary work.  (*PageID* 496-97, 670-71.)  The only medical findings Dr. Provaznik cited supporting the limitations he found were: limited flexion lumbar spine (*PageID* 496) and physical exam.  (*PageID* 670.)  Con-sidering Dr. Provaznik's failure to support his limitations with clinical findings and medical test results, the administrative law judge reasonably concluded that his was not entitled to controlling weight.  (*PageID* 77.)  20 C.F.R. § 404.1527(c)(2), (3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); SSR 96-2p. Notably, Dr. Provaznik did not even record significant examination findings at the time he gave the opinion that Kempton was disabled.  For example, a review of the record reveals that Dr. Provaznik first examined Kempton in October 2009.  (*PageID* 451.)  Dr. Provaznik found chronic low back pain and pain to palpitation on examination.  (*PageID* 447-51.)  The mere presence of some pain and tenderness does

not establish disability.  Thus, Dr. Provaznik's contemporaneous treatment notes do not

provide the kind of significant medical test results or clinical findings that would

support his opinion of disability.  *See McClanahan v. Astrue*, 2011 WL 672059 (S.D. Ohio

Feb. 16, 2011) (Barrett, J.) ("the essent-ial problem with the four pages of forms that

make up [the doctor's] opinion is that it is entirely conclusory.  Other than stating that

his observations are based on physical exams and history, [the doctor] gives no

indication of what evidence his opinion is based on"); *Ball v. Comm'r of Soc. Sec.*, 2010

WL 5885538 (S.D. Ohio Sept. 7, 2010) (Wehrman, MJ) ("where a physician's conclusions

regarding a claimant's  capacity contain no substantiating medical data or other

evidence, the administrative law judge is not required to credit such opinions"); *Wallace

v. Astrue*, 3:10-cv-199 (S.D. Ohio July 14, 2010) (Ovington, MJ) (the administrative law

judge reasonably did not give control-ling or substantial weight to treating physician's

opinion where the doctor "provided no reasons in support of her opinions" apart from

"listing several diagnoses and noting [the claimant's] 'severe pain'").

Referencing the October 13, 2005 MRI of the cervical spine, which showed mild

degenerative changes (*PageID* 339); the January 15, 2008 MRI of the lumbar spine, which

showed mild wedging of the L1 and L2 vertebra with evidence of Schmorl's nodes and

degenerative changes involving the facet joints in the lower lumbosacral spine (*PageID*

401);  a left lower extremity EMG in February 2008 which indicated chronic S1 radicu-

lopathy  (*PageID* 505-06); and a May 2008 MRI of the cervical spine which showed

multilevel cervical degenerative disc change and an extruded midline C6-7 disc (*PageID*

502-03); Kempton suggests that these tests provide the objective findings to support Dr. Provaznik's opinion. (Doc. 16, *PageID* 740.) However, these diagnostic test findings also fail to establish disability. For example, an x-ray of Kempton's lumbar spine taken in conjunction with Dr Swedberg's consultive examination was normal. (*PageID* 458.) In addition, all of the test results plaintiff relies on are dated before September 12, 2008.

As the administrative law judge appropriately noted, Dr. Provaznik's "far too extreme" opinion of disability was also inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), (4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Drs. McCloud and Klyop, state agency physicians, concluded Kempton could perform a range of light work and that the new and material evidence did not warrant altering Administrative Law Judge Michaelson's residual functional capacity finding. (*PageID* 140-57, 467-74, 547.) The state agency reviewing physicians' shared opinion contradicts Dr. Provaznik's unsupported and conclusory opinion and provides further support for the administrative law judge's finding that Kempton could perform a range of light work.

As the administrative law judge noted, Dr. Provaznik's opinion was also inconsistent with Kempton's activities. (*PageID* 77.) For example, when evaluated by Dr. Tanley in June 2010, Kempton was noted to be clean and appropriately dressed. (*PageID* 464.) Kempton reported that he watched television, especially NASCAR, spoke on the phone and helped his wife with the housework. (*PageID* 464, 544.) In December 2010, Dr.

25

Castle noted Kempton appeared adequately dressed and groomed.   (*PageID* 544.)

When examined by Dr. Aina in December 2010, Kempton reported he dressed himself

and tied his shoes.  (*PageID* 536.)

Plaintiff next argues that the administrative law judge selectively picked findings

and opinions from reports by examining doctors to support his residual functional

capacity finding. As an example, plaintiff points to the administrative law judge's

reliance on the reports by Doctors Swedberg, Aina and Ward. The administrative law

judge wrote:

> The opinion assessed by Dr. Swedberg in June 2010 is afforded great weight.
> Dr. Swedberg is a Board-certified specialist in internal medicine and he
> performed a thorough physical examination of the claimant. His examination
> included range of motion studies of the cervical and lumbar spine and
> included manual muscle testing. His physical findings are consistent with his
> ultimate findings reached in his conclusion that the claimant is capable of
> performing at least a mild to moderate amount of sitting, ambulating,
> standing, bending, kneeling, pushing, pulling, lifting and can-ying. In
> addition, he further assessed that the claimant would have no problems
> reaching, grasping or handling objects. There were no visual and/or
> communication limitations imposed, nor were there any environmental
> limitations (Exhibit B-5F).
>
> The opinion assessed by Dr. Aina in December 2010 is also afforded some
> weight. Dr. Aina physically examined the claimant and his findings were
> essentially normal. The doctor's examination included range of motion
> studies and manual muscle testing. This is consistent with the other physical
> medical evidence of record and consistent with the ultimate findings reached
> by the undersigned in this decision. However, his assessment that the
> claimant could lift and carry 40 pounds occasionally is not adopted as this is
> not consistent with the weight of the medical evidence as a whole.
>
> The opinion assessed by Dr. Ward in February 2011 is afforded partial
> weight. Dr. Ward performed a physical examination ofthe claimant.
> However, although Dr. Ward opined that the claimant had no limitations in

his ability to sit, stand or walk which is consistent with the ultimate findings reached in this decision, Dr. Ward's opinion that the claimant could only lift 10 pounds is not fully consistent with the medical evidence of record as a whole.

(*Id.*, *PageID* 77-78.)

As to Dr. Swedberg, plaintiff asserts that the administrative law judge stated that there was no evidence Kempton experienced true radicular type pain. (*Id.*, *PageID* 76.) Yet Dr. Swedberg found that Kepton's straight leg raising was diminished to 30 degrees on the left, and his assessment was low back pain with probable radiculopathy. (*Id.*, *PageID* 355-56.) Nonetheless, the office notes from Drs. Tyree and Provaznik indicate negative straight leg raising, and there is no indication of neurological deficits, muscle weakness, or other clinical diagnosis supporting a finding of nerve root impingement. There are no x-rays, MRIs or other medical tests demonstrating any significant bony abnormality or nerve root impingement. The range of motion in the lumbar spine is not severely limited.

Plaintiff argues that although Dr. Aina reported that because of Kempton's impairments "[p]rolonged standing and sitting for more than forty-five minutes to one hour may be affected", the administrative law judge selected other parts of his report and did not consider that opinion. But for the reasons outlined above, I conclude that the administrative law judge adequately explained his reasons for making the residual functional capacity findings he did and rejecting Dr. Aina's conclusion that Kempton's ability to stand for more than 45 minutes "might be affected."

Next the plaintiff argues that the administrative law judge said that he assigned "partial weight" to Dr. Ward's opinion but rejected his opinion that Kempton could lift a maximum of 10 pounds and could not perform fine manipulation. Yet he emphasized that Dr. Ward found plaintiff had just a 30% permanent, partial disability. However, Dr. Ward was only evaluating plaintiff's workers' compensation claim for disability arising from a work related injury to his wrists and hands. He did not evaluate any other physical impairment. While that statement of the administrative law judge misreads Dr. Ward's report, his overall reading of the evidence of record does not. And his residual functional capacity findings are supported by substantial evidence. That is a fair criticism of the administrative law judge's discussion of Dr. Ward's report, but on balance that report does not undermine the administrative law judge's residual functional capacity finding that Kempton retained the ability to perform a reduced range of jobs having light exertional demands.

Finally, plaintiff argues that when analyzing Dr. Castle's opinion the administrative law judge erred when he discounted it by asserting that the GAF score she assigned of 49 indicated a moderate symptoms. In fact, a GAF score of 49 is consistent with serious symptoms such as an inability to keep a job. Social Security Administrative Message 13066 (effective July 22, 2013) provides that "a GAF rating is opinion evidence [and that as] with other opinion evidence, the extent to which an adjudicator can rely on the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise." However, plaintiff has not seen his psychological

problems as significant enough to get treatment for them from anyone other than his primary care doctors. Their office notes do not demonstrate that Kempton suffers from psychological impairments that would prevent him from working.

**Conclusions.** The Magistrate Judge finds that Administrative Law Judge Keller considered the record evidence, including the record physicians' opinions, and the new and material evidence submitted since Administrative Law Judge Michaelson's September 2008 decision, appropriately applied *Drummond*, and reasonably concluded that Kempton had the residual functional capacity to perform a reduced range of light work. He was not required to grant significant weight to Dr. Provaznik's opinion that Kempton was disabled because it was not supported by objective medical findings and was inconsistent with other substantial evidence in the record, including the assessment of the state agency reviewing physicians and Kempton's activities. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1527(c)(2), (3), (4); SSR 96-2p; *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 287 (6th Cir. 1994) (administrative law judge not bound by treating physicians' opinions, especially where there is substantial evidence to the contrary); *Mullins v. Secretary of Health & Human Services,* 836 F.2d 980, 984 (6th Cir. 1987) ("claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the administrative law judge's factual findings").

I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R. Abel            
United States Magistrate Judge